```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
KIMBERLY PALERMO,                                                 :
                                                                  :
                        Plaintiff,                                :    24-CV-08671 (JAV)
                                                                  :
         -v-                                                      :    OPINION AND ORDER
                                                                  :
JUSLAW LLC, JUSGLOBAL, LLC and                                    :
BEATRICE O'BRIEN,                                                 :
                                                                  :
                        Defendants.                               :
------------------------------------------------------------------X
```

JEANNETTE A. VARGAS, United States District Judge:

Kimberly Palermo ("Plaintiff") alleges that she worked for Defendants JusLaw, LLC, and JusGlobal, LLC (collectively, the "Defendant Companies") for around a year and a half with no compensation. To settle Plaintiff's claims, the parties entered into a Resolution Agreement where defendants agreed to pay Plaintiff $250,000 ("Agreement"). After payment of only $10,000 was made, Plaintiff commenced this action alleging breach of the Agreement, breach of the duty of good faith and fair dealing, and violation of the New York City Freelance Isn't Free Act.

The Court is in receipt of the parties cross-motions for judgment on the pleadings. For the reasons that follow, the Court DENIES Defendants' Motion for Judgment on the Pleadings and GRANTS Plaintiff's Motion for Judgment on the Pleadings.

## BACKGROUND

Plaintiff, a resident and citizen of the State of Florida, was employed by Defendant Companies from on or about July 28, 2021, through on or about February 8, 2023. ECF No. 10 ("Compl."), ¶ 2; ECF No. 33 ("Defs. Mot.") at 2. JusGlobal, LLC is the parent company of JusLaw LLC ("JusLaw"), and both companies are Delaware limited liability corporations with offices in New York, NY. Compl. ¶¶ 3-4; Defs. Mot. at 2. Defendant Beatrice O'Brien ("O'Brien"), resident and citizen of the State of New Jersey, is the founder and owner of the Defendant Companies. Compl. ¶ 5; Defs. Mot. at 2. Plaintiff worked as the Chief Growth Officer of the Defendant Companies, where she led the marketing, sales, and customer success teams for the Defendant Companies. ECF No. 37 ("Defs. Opp.") at 8; ECF No. 41 ("Defs. Reply") at 4.

Plaintiff alleges that the Defendant Companies did not pay her any compensation due under the offer letter executed by the parties. Compl. ¶ 9. To resolve Plaintiff's claims of unpaid wages, Plaintiff, Defendant Companies, and O'Brien executed a resolution agreement on February 8, 2023 ("Agreement"). *Id.* ¶ 10; Defs. Mot. at 3. Section three of the Agreement reads as follows:

> 3. **Settlement**. Effective as of the Closing Date, The Company agrees to pay Palermo Two Hundred Fifty Thousand Dollars ($250,000.00) free and clear of all Liens of any kind (the "Settlement Payment"[)] to be paid by O'Brien by wire transfer of immediately available funds to a bank account notified by Palermo to O'Brien in writing in the following manner. Ten Thousand Dollars ($10,000.00) shall be paid on or before March 31, 2023. The remaining Two Hundred Forty Thousand Dollars ($240,000.000) shall be paid on or before June 30, 2024

>and only if company is funded at least Two Million
>Dollars ($2,000,000.00) before said date, then it shall be
>paid within a commercially reasonable time after funding.
>The company shall make all commercially reasonable
>efforts to obtain funding either through private or
>institutional lending.

ECF No. 27-1 at 1-2.

Pursuant to the Agreement, Plaintiff was paid $10,000 on or before March 31, 2023. Compl. ¶ 12; Defs. Opp. at 1. The remaining $240,000 was not paid on or before June 30, 2024. *Id.,* ¶ 15; Defs. Opp. at 1. Plaintiff maintains that the Agreement required O'Brien personally and the Defendant Companies to pay Plaintiff $240,000 by no later than June 30, 2024, with an accelerated due date for the payment if the Defendant Companies had been funded at least two million dollars prior to June 30. Compl. ¶ 14. The parties agree that Defendant Companies were not funded at least two million dollars prior to June 30. ECF No. 39 ("Pl. Opp.") at 1; Defs. Reply at 1.

Plaintiff filed the present action on November 15, 2024. Count I asserts a claim for breach of contract due to Defendants' failure to pay $240,000 to Plaintiff by or before June 30, 2024. Compl. ¶¶ 18-22. Count II asserts a claim for breach of the duty of good faith and fair dealing. Compl. ¶¶ 23-25. Count III is brought under the New York City Freelance Isn't Free Act. Compl. ¶¶ 26-33. Defendants filed their answer to the Complaint on March 19, 2025, attaching a copy of the Agreement. ECF No. 27 ("Answer").

The parties have now filed cross-motions for judgment on the pleadings. *See* ECF No. 32; ECF No. 35. Defendants also filed a Declaration of Gilbert de Dios,

3

Esq., in support of their motion (ECF No. 34) and a Declaration of Beatrice O'Brien in opposition to Plaintiff's motion (ECF No. 40).

## LEGAL STANDARD

Federal Rules of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is designed to provide a means of disposing of cases when the material facts are not in dispute." *Rivera v. Schweiker*, 717 F.2d 719, 722 n.1 (2d Cir. 1983) (cleaned up). If there are issues of fact which, if proved, would defeat recovery, judgment on the pleadings is not appropriate. *Lively v. WAFRA Inv. Advisory Grp., Inc.,* 6 F.4th 293, 301 (2d Cir. 2021). "Thus, a court may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.* at 302.

A Rule 12(c) motion will not be granted "unless the movant clearly establishes that . . . he is entitled to judgment as a matter of law." *Jacobsen v. New York City Health & Hosps. Corp.*, No. 12 CIV. 7460(JPO), 2013 WL 4565037, at *3 (S.D.N.Y. Aug. 28, 2013). "Judgment pursuant to Rule 12(c) can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties because initial interpretation of a contract is a question of law for a court." *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545-46 (S.D.N.Y. 2021) (cleaned up).

When evaluating a Rule 12(c) motion, courts may only consider: "(1) the non-movant's pleadings; (2) the documents that are attached to, integral to, or incorporated by the pleadings; and (3) judicially noticeable extrinsic evidence." *1-800 Contacts, Inc. v. JAND, Inc.,* 119 F.4th 234, 246 (2d Cir. 2024). Further, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

## DISCUSSION

As an initial matter, since the parties' Rule 12(c) motions raise questions of law pertaining to the interpretation of the Agreement, the Court can resolve the case on the uncontested facts set forth in the pleadings and stipulated to by the parties, without consideration of extrinsic evidence. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."). The Agreement is integral to the Complaint. *See, e.g.*, *Ham v. LinQuest Corp.,* No. N23C-05-131 PRW CCLD, 2024 WL 1850518, at *2 n.8 (Del. Super. Ct. Apr. 18, 2024) (considering contracts that were not part of the pleadings but were integral to the complaint and incorporated by reference therein); *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.,* No. CIV.A. 4304-VCP, 2009 WL 3465984, at *8 (Del. Ch. Oct. 28, 2009) (considering the underlying contract integral to the breach of contract claim and

5

part of the complaint even though the agreement was not attached to the complaint); *see also Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196–97 (2d Cir. 2005) (applying New York law, finding that the court can consider the underlying contract in breach of contract claim even if it is not formally incorporated by reference in the complaint). Moreover, a copy of the Agreement was filed as an exhibit to the Answer, thereby incorporating it into the pleadings. There is no dispute as to the authenticity of the Agreement, only as to its meaning.

Moreover, the parties have stipulated to certain material facts. Specifically, Defendants and Plaintiff

> agree and have represented that there is no dispute [as] to three facts relevant to the settlement agreement at issue dated February 8, 2023 (the "Resolution Agreement"). First, that the initial payment of $10,000, pursuant to Section 3 of the Resolution Agreement, was paid to Plaintiff. Second, that a second payment of $240,000 was not paid to Plaintiff. Third, that Defendant Companies, nor any companies, were not funded at least $2,000,000.

Defs. Opp. at 1; *see also* ECF No. 36 ("Pl. Mot"). at 3.

With respect to the two declarations that were submitted in connection with the motions, the Declaration of Gilbert de Dios, Esq., submitted in support of Defendants' motion, for the most part summarizes the pleadings, sets forth the procedural posture of the litigation, advances legal arguments, and attaches copies of the pleadings and the Agreement, which are already on the docket. The Court has not considered this document in rendering its decision. Similarly, the Declaration of Defendant Beatrice O'Brien largely contains extrinsic evidence that

6

would be inappropriate for the Court to consider under a Rule 12(c) analysis. The Court therefore disregards this Declaration.[1]

In Count I of the Complaint, Plaintiff alleges that Defendants breached the Agreement by failing to pay her $240,000 by or before June 30, 2024. Compl. ¶¶ 19-22. Plaintiff seeks damages for the common law breach of contract in the amount of $240,000. *Id.* The parties agree that the breach of contract claim can be decided as a matter of law. Defs. Mot. at 10; Pl. Mot. at 1. But the motion papers raise three distinct issues with respect to this claim. First, which forum's law governs the interpretation of the Agreement? Second, has there been a breach of the terms of the Agreement? And third, if there was a breach, which Defendants are liable? The Court considers each question in turn.

### A. Choice of Law

Section fourteen subsection (a) of the Agreement contains a choice of law clause: "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to choice or conflict of law principles." ECF No. 27-1 at 8. "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.,* 414 F.3d 325, 332 (2d Cir. 2005).

---

[1] Striking of these declarations, as urged by the Plaintiff, is not necessary considering the Court's finding that they are extrinsic and therefore outside the Court's consideration for these cross-motions.

7

The Court has diversity jurisdiction in this case and therefore the relevant forum is the state of New York.

It is well settled that New York courts "will generally enforce choice-of-law clauses." *Ministers & Missionaries Ben. Bd. v. Snow,* 26 N.Y.3d 466, 470, 45 N.E.3d 917, 919 (2015). Parties are generally free to contract on whatever terms they agree to. *Brown & Brown, Inc. v. Johnson,* 25 N.Y.3d 364, 368, 34 N.E.3d 357, 360 (2015). New York courts generally enforce a choice-of-law clause "so long as the chosen law bears a reasonable relationship to the parties or the transaction," *Welsbach Elec. Corp. v. MasTec N. Am., Inc.,* 7 N.Y.3d 624, 629, 859 N.E.2d 498, 500 (2006).

Despite the choice-of-law clause in the Agreement, Plaintiff maintains that New York law should apply when interpreting the Agreement because the parties do not have sufficient contacts with Delaware. Pl. Mot. at 4. But the Defendant Companies are incorporated in Delaware. Compl. ¶¶ 3-4; Defs. Mot. at 2. Courts have "deemed one party's incorporation in the state of the parties' chosen law sufficient for purposes of the 'reasonable relationship' test." *EMA Fin., LLC v. NFusz, Inc.,* 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020) (collecting cases); *see also Power Up Lending Grp., Ltd v. Danco Painting, LLC,* No. 15-CV-4537 (JS) (SIL), 2016 WL 5362558, at *4 (E.D.N.Y. Aug. 10, 2016), *report and recommendation adopted*, No. 15-CV-4537(JS)(SIL), 2016 WL 5349784 (E.D.N.Y. Sept. 23, 2016) ("As Plaintiff is a Virginia corporation and the parties agreed to apply the state's laws, the Court finds sufficient contacts with the state of Virginia.").

The Court therefore finds that the choice-of-law clause is enforceable and that Delaware law controls the interpretation of the Agreement. *Fin. One Pub. Co.,* 414 F.3d at 332 (finding that once a choice of law clause is held to be valid, "the law selected in the clause dictates how the contract's provisions should be interpreted").

Choice of law does not substantively alter the Court's analysis of the contractual provision at issue in this case. New York and Delaware both adhere to the common law plain meaning doctrine when interpreting a contract's meaning. *Compare Chesapeake Energy Corp. v. Bank of New York Mellon Tr. Co.,* 773 F.3d 110, 114 (2d Cir. 2014) (Under New York law, "the words and phrases [in a contract] should be given their plain meaning. . ."), *with Osborn ex rel. Osborn v. Kemp,* 991 A.2d 1153, 1159–60 (Del. 2010) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions."). Plaintiff and Defendant are therefore both correct in observing that the result is the same under New York or Delaware law. Defs. Reply at 2; Pl. Opp. at 5 n.2.

## B. Breach of the Agreement

Under Delaware law, the elements of a breach of contract claim are: (1) the existence of a contract, (2) the breach of an obligation imposed by that contract, and (3) resulting damages to the plaintiff. *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 612 (Del. 2003). Neither party disputes the existence of the Agreement. Defs. Mot. at 3; Pl. Mot. at 2. And both parties agree that the $240,000 payment was not made. Defs. Opp. at 1; Pl. Mot. at 3. The only question, then, is whether

9

the Agreement imposed an obligation on Defendants to pay $240,000 on or before June 30, 2024.

Where the terms of a contract are unambiguous, Delaware courts interpret the terms according to their plain and ordinary meaning. *Alta Berkeley VI C.V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del. 2012). Language in a contract is clear and unambiguous when the provision is "reasonably susceptible of only one interpretation." *Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, No. 166, 2024, 2025 WL 1213667, at *8 (Del. Apr. 28, 2025) (cleaned up); *BitGo Holdings, Inc. v. Galaxy Digital Holdings, Ltd.,* 319 A.3d 310, 322 (Del. 2024). Yet, "[l]anguage from a contract need not be perfectly clear for an interpretation of it to be deemed as the only reasonable one." *BitGo Holdings, Inc.,* 319 A.3d at 322. Ambiguity is assessed using an objective test, "through the lens of what a reasonable person in the position of the parties would have thought the contract meant." *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010) (quotations omitted). Further, "[t]he parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous." *Osborn*, 991 A.2d at 1160.

"Under Delaware law, where contract language is clear and unambiguous, the meaning of the contract is a matter of law for the court." *Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 157 (2d Cir. 2017). "The determination as to whether a contract is ambiguous is also a matter of law for the court." *Id.*

10

Defendants argue that the Agreement demonstrates that the parties agreed to settle for a potential amount of $250,000.  Defs. Mot. at 3.  According to Defendants, however, only payment of $10,000 was assured under the Agreement, with the remaining $240,000 being contingent on the Defendant Companies being funded, Defs. Mot. at 8, which both parties agree never happened.

Plaintiff contends that the disputed sentence of section three has two parts: an initial clause that establishes June 30, 2024, as the last date by or before which the remaining $240,000 must be paid; and a subsequent conditional statement requiring that only if the funding requirement is met, then the mandatory payment of $240,000 shall be paid sooner than June 30, 2024.  Pl. Opp. at 2.

The Court agrees with both parties' assertion that the key provision of the Agreement is unambiguous.  Pl. Mot. at 1; Defs. Mot. at 8.  While the parties put forward different interpretations of section three, the language is plain in that when read in its entirety, there is no reasonable basis for difference of opinion on the meaning.  Having determined that section three of the Agreement is unambiguous, application of the plain meaning legal standard is appropriate.  And under that standard, the Agreement obligated Defendants to pay Plaintiff the remaining settlement payment of $240,000.

The Court starts with the initial language in section three of the Agreement, which reads: "Effective as of the Closing Date, the Company agrees to pay Palermo Two Hundred Fifty Thousand Dollars ($250,000.00) free and clear of all Liens of any kind (the "Settlement Payment"[)] to be paid by O'Brien by wire transfer of

11

immediately available funds to a bank account notified by Palermo to O'Brien in writing in the following manner." ECF No. 27-1 at 1-2. This language contains no qualifiers. It states unequivocally that the Company "agrees" to pay Plaintiff $250,000, which amount is defined as the Settlement Payment. The next portion of the sentence then discusses *how* the payment would be made: that the payment would be made by "wire transfer of immediately available funds" in the "following manner." It is clear, then, under a plain reading of the text, that the next sentences are intended to describe the "manner" in which the settlement amount of $250,000 was to be paid. And they do.

The following sentence states that "Ten Thousand Dollars ($10,000.00) shall be paid on or before March 31, 2023." The third sentence in this section has been the focus of the parties' briefing. The Court finds that the third sentence contains two independent clauses. The first independent clause reads: "The remaining Two Hundred Forty Thousand Dollars ($240,000.000) shall be paid on or before June 30, 2024 . . . ." The second independent clause reads: "[O]nly if company is funded at least Two Million Dollars ($2,000,000.00) before said date, then it shall be paid within a commercially reasonable time after funding." These two independent clauses are connected by the word "and."[2]

---

[2] In their motion, Defendants agree that the disputed phrase contains two independent clauses, where "both the First Clause and the Second Clause must be given equal weight in the compound sentence to be true." Defs. Mot. at 8. Later, Defendants seem to abandon this assertion, arguing that the second clause is a dependent clause that cannot stand alone as a complete sentence. Defs. Opp. at 5.

12

There is no dispute that the term "it" in the second clause refers back to the "remaining" payment of $240,000. The only question, then, is whether this sentence makes payment of that amount conditional upon the funding of the Defendant Companies, or whether only the timing of the payment was made conditional. The natural reading of this sentence is that the timing alone was made conditional, not the obligation to make the payment itself. The first independent clause sets a deadline for the "remaining" $240,000 to be paid. The second independent clause sets a more rapid timeline for the remaining $240,000 to be paid if the Defendant Companies are funded at the appropriate level.

The plain meaning of a phrase using an "only if . . . then . . ." construction is that the phrase following the "then" does not become enforceable unless the condition following "only if" is met. Here, the condition after the "only if" is the company receiving the funding prior to June 30, and the phrase following "then" is that the $240,000 shall be paid within a commercially reasonable time after this funding. The parties do not dispute that the funding condition was not met. Defs. Reply at 1; Pl. Opp. at 1. Therefore, the requirement for payment to be made "within a commercially reasonable time after funding" is not enforceable.

In contrast, the first independent clause stands alone, is not conditional, and remains enforceable. Accordingly, payment of $240,000 was to be paid on or before June 30, 2024. The Defendant Companies breached the Agreement by failing to pay Plaintiff by that date.

13

This reading of the Agreement is reinforced by consideration of section three in its totality. *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.,* 261 A.3d 1199, 1208 (Del. 2021) (plain meaning should be ascertained by considering agreement "as a whole"). The defining of the total settlement amount to be paid to Plaintiff as $250,000, and the use of the word "remaining" to refer to the $240,000 payment, indicates that the $240,000 was not a contingent payment that would be due only if particular conditions were met. Instead, the parties agreed to a settlement amount of $250,000, and conditioned the timing of those payments on subsequent events.

Defendants' attempt to read the Agreement as containing a condition precedent to the payment of the $240,000 requires reading words out of the Agreement, and rendering other portions of the sentence a nullity. For example, Defendants argue that sentence should be taken to read: "the remaining Two Hundred Forty Thousand Dollars ($240,000.000) shall be paid . . . only if company is funded at least Two Million Dollars ($2,000,000.00) . . . ." Defs. Opp. at 5-6. If the sentence read as Defendants now construct it, their argument would be persuasive. But as the prominent use of ellipses indicates, that is not what the Agreement says. Defendants have eliminated the critical words the words "by June 30, 2024 and." If Defendants are correct that payment would only be due if funding was received, then either the phrase "by June 30, 2024 and" or the phrase "within a commercially reasonable time" would be rendered a nullity. Defendants essentially concede this point, arguing that the phrase "within a commercially reasonable time" is of "no

14

consequence, it simply ensures that Plaintiff gets paid reasonably promptly 'after funding' occurs." Defs. Opp. at 6.

When interpreting a contract, courts must "give each provision and term effect and not render any terms meaningless or illusory." *Manti Holdings, LLC,* 261 A.3d at 1208 (cleaned up). Defendants' attempt to rewrite the Agreement's terms by reading out inconvenient words and phrases violates this cardinal principle of contractual interpretation.

Defendants maintain that the final sentence in section three evidences that payment was contingent on funding. Defs. Opp. at 7. The last sentence requires that the Defendant Companies "make all commercially reasonable efforts to obtain funding either through private or institutional lending." ECF No. 27-1 at 2. In keeping with the Court's finding that the sentence immediately preceding this last sentence plainly requires payment of $240,000 on or before June 30, 2024, where payment would be due sooner if funding was met, the Court reads the last sentence as requiring the Defendant Companies to make efforts to obtain said funding, but does not impact the requirement to make the $240,000 payment by no later than June 30, 2024.

Relying on the O'Brien Declaration, Defendants attempt to make a sensibility argument to support their interpretation. Defendants argue that finding the remaining $240,000 payment is contingent on the Defendant Companies being funded makes sense in the factual context surrounding the negotiation of the Agreement—where Defendants are start-up companies strapped for cash. Defs.

15

Opp. at 8. Further, Defendants aver that their interpretation makes "business sense" as Plaintiff's role with the Defendant Companies was to lead the marketing, sales, and customer success teams with a focus on fundraising, so Plaintiff would only be entitled to more than $10,000 if her past fundraising and marketing efforts led to funding above $2 million by June 30, 2024. Defs. Opp. at 8-9.

The Court does not disagree that it is reasonable, under certain business conditions, to agree to settle on continent terms. But the Court cannot consider this extrinsic evidence regarding the parties' intent where, as here, the text is unambiguous. *Samuel J. Heyman 1981 Continuing Tr. for Lazarus S. Heyman v. Ashland LLC,* 284 A.3d 714, 721 (Del. 2022). This is because "[t]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992) (citations omitted). To hold otherwise would "in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *Id.* (citations and quotations omitted).

Given the Court's finding that the disputed language is unambiguous, the Court may only look at the four corners of the contract to determine the intent of the parties. The Court therefore does not consider Defendants' arguments related to the financial state of the business when entering into the Agreement.

The Court holds, as a matter of law, that the Agreement required payment of $240,000 by June 30, 2024. Plaintiff is therefore entitled to judgment on her breach of contract claim.

### C. Liability For Breach of the Agreement

Having determined that the Agreement has been breached, the Court turns to the parties' dispute about O'Brien's personal liability for the breach under the Agreement. Plaintiff argues that O'Brien is personally liable (Pl. Mot. at 9-10; ECF No. 42 at 3) while Defendants claim that O'Brien executed the Agreement only in her capacity as an executive of both Defendant Companies (Defs. Opp. at 2).

"[A] general principle of contract law [is] that only a party to a contract may be sued for breach of that contract." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,* 817 A.2d 160, 172 (Del. 2002) (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,* 752 A.2d 1175, 1180 (Del. Ch. 1999)). In terms of personal liability on corporate contracts, "Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually." *Wallace,* 752 A.2d at 1180 (citing *Brown v. Colonial Chevrolet Co.,* 249 A.2d 439, 441 (Del. Super. Ct. 1968)); *see also Pennsylvania House, Inc. v. Kauffman's Of Delaware, Inc.,* No. 97J-10-039, 1998 WL 442701, at *2 (Del. Super. Ct. May 20, 1998) ("An agent may prevent himself from becoming a party to the instrument by making it clear that he is acting solely in a representative capacity for a disclosed principal."). The Supreme Court of Delaware has found that where an employer's president and owner signed an employment agreement *solely* in a representative capacity for the company, they could not be

17

personally liable for the company's breach of the employment agreement. *Tekstrom, Inc. v. Savla,* 918 A.2d 1171 (Del. 2007).[3]

Here, however, O'Brien did not take any steps to make it clear that she intended to act solely in her capacity as a representative of the Defendant Companies. Rather, the Agreement lists the "parties" to the Agreement as: "JusGlobal, LLC, JusLaw, LLC and related affiliates, a Delaware limited liability company (the "Company"), Beatrice O'Brien ("O'Brien"), and Kimberly Palermo ("Palermo")." ECF No. 27-1 at 1. O'Brien is not identified as a "party" in a representative capacity; instead, O'Brien is listed as an individual party to the Agreement. Further evidence that O'Brien is a party to the Agreement can be seen on the signature page of the Agreement where O'Brien signs the Agreement twice: once under the heading of Defendant Companies, listing O'Brien's title as "Chair" of the companies, and a second time with no reference to the Defendant Companies. ECF No 27-1 at 11. *See F.D.I.C. v. Woodside Const., Inc.* 979 F.2d 172, 175 (9th Cir. 1992) ("The manner in which Galt signed the promissory note bound him as an endorser in his individual capacity. He signed the note under the corporate name with the designation of his representative capacity. He also signed the note above the corporate name with no designation of any representative capacity. It is this

---

[3] While the Court finds the Delaware controls the interpretation of the agreement, it notes that New York law follows a similar approach to determining personal liability. *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.,* 301 F.3d 50, 54 (2d Cir. 2002) ("We note further that the New York Court of Appeals has observed that where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual." (cleaned up)).

18

latter signature that creates Galt's liability."). Accordingly, the Court concludes that O'Brien is personally liable for the breach of contract.

## CONCLUSION

Plaintiff requests that, in the event the motion for judgment on the pleadings is granted with respect to Count I, that Counts II and III of her Complaint be dismissed without prejudice. Pls. Mot. at 1 n.1.

Accordingly, Plaintiff's motion for judgment on the pleadings is GRANTED. Defendants' motion for judgment on the pleadings is DENIED.

The Clerk of Court is directed to enter judgment on Count I of the Complaint in favor of Plaintiff against the Defendants, jointly and severally, in the amount of $240,000, as well as post-judgment interest from the date the Clerk of Court enters judgment until the date of payment by Defendants, at the rate set forth in 28 U.S.C. § 1961. The remaining counts of the Complaint are dismissed without prejudice. All pending motions should be terminated and the case should be closed.

SO ORDERED.

Dated: August 4, 2025  
     New York, New York

_____  
JEANNETTE A. VARGAS  
United States District Judge